### SCACABAROZI v. CITY OF NEW YORK.

### NEWTOWN CREEK TOWING CO. v. SAME.

### THE RUSSELL NO. 18.

#### Nos. 10637, 10638.

District Court, E. D. New York.

Feb. 11, 1930.

Alexander & Ash, of New York City (Edward Ash, of New York City, of counsel), for libelants.

Arthur J. W. Hilly, Corp. Counsel, of New York City (Matthew J. Troy, of New York City, of counsel), for respondent.

GALSTON, District Judge.

On the evening of May 21, 1927, the steam tug Russell No. 18, after landing a vessel at the oil dock, foot of Greenpoint avenue and Newtown creek, at a point about one hundred feet from the Greenpoint Avenue Bridge, attempted to back through the Queens draw of the bridge in the belief that the draw was open. The operator in charge of the bridge, however, had started to close the draw and brought it in contact with the starboard side aft of the tug Russell No. 18, breaking her skylight and other parts of the superstructure. The displaced superstructure came through the skylight to the engine room of the Russell No. 18 and slightly injured the libelant Scacabarozi, the engineer of the tug.

What was the proximate cause of the accident? I find the facts as follows:

Some time in the afternoon of May 21, 1927, the tug Russell No. 18, blew for the Greenpoint Avenue Bridge to open, giving the customary three-blast signal for that purpose. The bridge was opened and the tug Russell No. 18 with utility oil barge passed through the East draw and proceeded to a dock at about one hundred feet from the bridge. The tug was lying stern towards the bridge on the East draw or Queens side of the channel. The tug then gave two toots of her whistle, which signal was properly interpreted by the operator of the bridge as a direction to the barge to cast off her lines. Then the tug reversed her engine and backed towards the bridge.

Meanwhile another tug, the Atlas, had passed through the draw in the West channel, having previously given her signal for the draw to be opened. The operator of the drawbridge, having seen the Atlas pass through the draw and having heard no other whistles except the two whistles from the Russell No. 18 (the casting off lines signal), proceeded to close his bridge, with the consequent damage.

It is true that there is a conflict of testimony with respect to the signals given by the tug Russell No. 18 after delivering the barge to the dock. Those on board and the bargeman testified that she blew three whistles and in consequence expected the bridge to be opened to enable her to pass through. On the other hand, the bridge operator, the bridge oiler, and one of the bridge gatemen say that they heard but the two-whistle blast from the Russell No. 18.

Another witness on behalf of the respondent testified that though he was thoroughly acquainted with the custom of maneuvering in the channel, he had never seen the Russell No. 18 back through the bridge, as her captain had asserted she was in the habit of doing, and that it was unusual for vessels so to do.

In the circumstances I think it is reasonable to conclude that the negligence was that of the captain of the Russell No. 18. It was customary to give cast-off signals; those he undoubtedly gave. The Russell No. 18 knew that the Atlas was just going through the bridge and the captain of the Russell No. 18 probably thought that the bridge would still be open when he backed through. For him it would have been a safer maneuver to follow the custom of rounding to, instead of backing through the draw. Moreover, I was much impressed by the intelligence of the operator of the bridge; and I think he was telling the truth.

The libels will be dismissed.